UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE COUNTY AIRPORT AUTHORITY
and DELTA AIR LINES, INC.,

      Plaintiffs,                            CASE NO. 11–15597
                                                   HON. LAWRENCE P. ZATKOFF

v.

JOHNSON CONTROLS, INC., KLEEN-TECH
SERVICES CORP., and THE PHOENIX
INSURANCE CO.,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 7th day of August, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [dkt 17]. The motion has been fully briefed. The Court finds that the facts and legal arguments pertinent to the motion are adequately presented in the parties' papers such that the decision process will not be aided significantly by oral arguments. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved solely on the briefs submitted by the parties. For the reasons that follow, Plaintiffs' motion for summary judgment is DENIED.

## II. BACKGROUND

Plaintiffs Wayne County Airport Authority ("Plaintiff WCAA") and Delta Air Lines, Inc. ("Plaintiff Delta") have filed this declaratory judgment action with the Court against Defendant Johnson Controls, Inc. ("Defendant JCI"), Defendant Kleen-Tech Services Corp. ("Defendant Kleen-Tech"), and Defendant The Phoenix Insurance Company ("Defendant Phoenix Insurance"). Plaintiffs claim that Defendant JCI has a duty to defend and indemnify Plaintiffs in *Brown v. Kleen-Tech Services Corp.*, No. 11–14800 (E.D. Mich. October 31, 2011), a case currently pending before the Court, and claim that Defendant JCI breached a service agreement ("Service Agreement") entered into between Plaintiff Delta and Defendant JCI.

### A. PARTIES

Plaintiff WCAA is a Michigan government airport authority, which owns the Detroit Metropolitan Wayne County Airport ("DTW"). Plaintiff WCAA leases a portion of DTW, known as the Robert C. McNamara Terminal (the "McNamara Terminal") to Plaintiff Delta, a Delaware corporation.[1] Under the terms of the McNamara Terminal lease between Plaintiff WCAA and Plaintiff Delta, Plaintiff Delta agreed to supply janitorial and other services at the McNamara Terminal. Compl. ¶ 10. Plaintiff Delta subcontracted its obligation to provide janitorial services at the McNamara Terminal through the Service Agreement (the "Service Agreement") entered into with Defendant JCI, a Wisconsin corporation. Defendant JCI then subcontracted its obligation to provide janitorial services at the McNamara Terminal to

---

[1] The McNamara Terminal was originally known as the Midfield Terminal. Plaintiff WCAA originally leased the terminal to Northwest Airlines, Inc., but it later merged with Plaintiff Delta. While certain exhibits attached to the pleadings refer to Midfield Terminal and Northwest Airlines, Inc., the Court will construe such references as the McNamara Terminal and Plaintiff Delta, respectively.

Defendant Kleen-Tech, a Texas corporation. Defendant Kleen-Tech obtained a certificate of general liability insurance ("Phoenix Insurance Policy"), covering the work it performs at the McNamara Terminal, from Defendant Phoenix Insurance, a Connecticut corporation. Plaintiff WCAA and Defendant JCI are among the additional insured named on the Phoenix Insurance Policy. Def.'s Resp. to Compl, at Ex. 2A, 2.

### B. THE SERVICE AGREEMENT

Under the Service Agreement, Defendant JCI's obligations include general building maintenance, trash removal, and janitorial services at the McNamara Terminal. Compl. Ex. 2A, at 2.2–A1. Included in the Service Agreement is an indemnification clause (the "Indemnification Clause"), which states:

> [Defendant JCI] hereby agrees to indemnify and hold harmless [Plaintiff Delta], its officers, directors, employees and agents (the "Indemnified Parties"), from and against any and all claims, liabilities, losses, damages, judgments, penalties or expenses (including reasonable attorney's fees and litigation expenses), which may be imposed upon, incurred by or recovered from the Indemnified Parties as a direct or indirect result of [Defendant JCI's] performance of, or failure to perform, his obligations under this Agreement, or [Defendant JCI's] negligence or willful misconduct in performance of the Services.

Compl. Ex. 2A, at 2.2–7. The Service Agreement further states that, "[Defendant JCI] shall reimburse [Plaintiff Delta] for all facility user claims resulting from [Defendant JCI's] improper or inadequate performance of services under this Agreement." Compl. Ex. 2A, at 2.2–4, ¶ 8(a).

### C. THE BROWN CASE

On December 23, 2009, Debra Brown ("Ms. Brown") flew to Detroit on Plaintiff Delta's flight. *See* Third Am. Compl. ¶ 19, *Brown*, No. 11–14800. After exiting the plane, Ms. Brown walked through the McNamara Terminal where she allegedly slipped and fell on a substance located on the ground. *Id.* The substance, purportedly grease from a food vendor, was allegedly

spilled by an employee of the food vendor. *Id.* at ¶ 23. Ms. Brown alleges that Plaintiff WCAA, Plaintiff Delta, Defendant Kleen-Tech, and other defendants not involved in the instant case, are at fault for failing to timely clean up the spill. *Id.* at ¶ 24. As a result of the alleged untimely clean-up, Ms. Brown suffered personal injuries, ultimately filing the *Brown* action against Plaintiff WCAA, Plaintiff Delta, Defendant Kleen-Tech, and several other defendants. *Id.* at ¶ 42. Plaintiff Delta has indemnified and assumed the defense of Plaintiff WCAA in *Brown* due to contractual obligations. Pl's Br. Supp. Summ. J., at 2. In turn, Plaintiff Delta requested that Defendant JCI assume its defense in *Brown* according to the Indemnification Clause in the Service Agreement. At this time, Defendant JCI has not assumed Plaintiff Delta's defense in *Brown*.

### D. PROCEDURAL HISTORY

Plaintiffs filed this Complaint on March 14, 2012 requesting that the Court declare the rights and obligations of the parties under the Service Agreement. The Court's jurisdiction over Plaintiffs' Complaint is based on diversity. Prior to discovery, Plaintiffs filed the instant motion. No material facts are in dispute. Plaintiffs assert, as a matter of law, the Indemnification Clause requires Defendant JCI to defend and indemnify Plaintiffs in *Brown*. Contrary to Plaintiffs' claim, Defendant JCI argues that, as a matter of law, it has no duty to defend Plaintiffs and is not required to indemnify Plaintiffs until *Brown* has been resolved.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiffs bring this action seeking the Court to (A) find that the Service Agreement requires Defendant JCI to (1) defend and (2) indemnify Plaintiffs in *Brown*. Plaintiffs also seek the Court's determination that (B) Defendant JCI breached the Service Agreement by failing to obtain a proper insurance policy as required under the Service Agreement.

### A. CONTRACT INTERPRETATION

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994).[2] In interpreting a contract, the Court must interpret the contract as a whole, reading every word in harmony and construing each term consistent with every other. *See Johnston v. Miller*, 40 N.W.2d 770, 771–2 (Mich. 1950). Interpretation of the Service Agreement is a matter of law. *See Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003).

If, in applying these principles, the Court concludes that the contract is ambiguous, the interpretation is no longer a question of law for the Court, but a question of fact to be determined by the jury. *See O'Connor v. March Automatic Irr. Co.*, 218 N.W. 784, 787 (Mich. 1928) ("Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but, where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury . . . .").

Unambiguous contracts, on the other hand, must be interpreted and enforced by the Court as written. *See Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). Unambiguous contracts reveal the parties' intent as a matter of law. *Id.* The Court will then enforce the determined intent, unless it is contrary to public policy. *See Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003).

---

[2] In an action brought before the Court on diversity, the Court applies the substantive law of the forum state. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). Here, the parties have also agreed that Michigan law governs. *See* Compl. Ex. 2A, at 2.2–10, ¶ 24. The Service Agreement provides that it, "shall be interpreted and construed in accordance with the laws of the State of Michigan and the United States of America." *Id.*

1. **THE DUTY TO DEFEND**

Pursuant to the terms of the Service Agreement, Plaintiff Delta argues that Defendant JCI must defend and indemnify Plaintiff Delta in *Brown*. Plaintiff Delta relies on the following language of the indemnification clause:

> [Defendant JCI] hereby agrees to indemnify . . . [Plaintiff Delta] . . . from and against any and all claims, liabilities, losses, damages, judgments, penalties or expenses . . . which may be imposed upon, incurred by or recovered from [Plaintiff Delta] as a direct or indirect result of [Defendant JCI's] performance . . . or failure to perform . . . .

Pl's Br. Supp. Summ. J., at iv, ¶ 1.

The duty to defend and the duty to indemnify, however, are independent from one another. *See Ajax Paving Indus., Inc. v. Vanopdenbosch Const. Co.*, 797 N.W.2d 704, 710 (Mich. Ct. App. 2010). The duty to defend and the duty to indemnify have distinct meanings. Black's Law Dictionary defines "defend" as "deny, contest, or oppose (an allegation or claim)." 482 (9th ed. 2009); *see also AJAX*, 797 N.W.2d at 710. Differing with "defend," "indemnify" is defined as "reimburse (another) for a loss suffered." Black's Law Dictionary, at 837; *see also AJAX*, 797 N.W.2d at 710. Reviewing the Indemnification Clause, and the Service Agreement as a whole, including the language relied on by Plaintiff Delta, there is no language providing for a duty to defend. As such, Plaintiffs' assertion that Defendant JCI must defend them in *Brown* fails as a matter of law.

2. **THE DUTY TO INDEMNIFY**

Plaintiff Delta also avers that Defendant JCI has a duty to indemnify Plaintiffs in the *Brown* suit based on the Indemnification Clause in the Service Agreement. Plaintiff Delta argues that Defendant JCI must indemnify Plaintiff Delta for "any and all claims," without regard to whether Defendant JCI has been found at fault. Pl's Br. Supp. Summ. J., at 9. Plaintiff Delta

states that because the *Brown* action is, in fact, a "claim," such a claim was contemplated and is covered by the Indemnification Clause in the Service Agreement.  *Id.*  According to Plaintiffs, the fact Defendant JCI has not been found liable to Ms. Brown is of no importance; Ms. Brown's allegations are sufficient to trigger Defendant JCI's duty to indemnify.  To support its assertion, Plaintiff Delta cites a plethora of Michigan cases that have found disputed indemnification clauses to cover all "claims" without regard to fault (mere allegations were sufficient).  *See AJAX*, 797 N.W.2d 704; *Baker Concrete Const., Inc. v. Whaley Steel Corp.*, No. 272350, 2008 WL 5077059 (Mich. Ct. App. Dec. 2, 2008);  *Eller ex rel. Eller v. McLouth Steel*, No. 220337, 2001 WL 738424 (Mich. Ct. App. June 29, 2001);  *Walbridge Aldinger Co. v. Walcon Corp.*, 525 N.W.2d 489 (Mich. Ct. App. 1994);  *Fischbach-Natkin Co. v. Power Process Piping, Inc.*, 403 N.W.2d 569, 571 (Mich. Ct. App. 1987).

The cases relied on by Plaintiff Delta, however, construed the specific language of the disputed indemnification agreements on a case-by-case basis, as opposed to finding that indemnification is *always* triggered without regard to fault.  Specifically, when the disputed indemnification agreements contained language that included "alleged claims" or "claims that in any way arise from or out of" the indemnitor's performance, the courts found that indemnification existed without regard to fault.  *See*, *e.g.*, *Baker Concrete*, No. 272350 at 6 ("[w]ith this type of language, fault is irrelevant. . .").  None of the cases, though, state in broad terms that indemnification always arises without regard to fault.

Defendant JCI, however, argues that since the Indemnification Clause in the Service Agreement does not include any of the language construed in the cases above, such as "alleged"

8

or "arising in any way out of," and there is a genuine dispute about Defendant JCI's fault in *Brown*, Plaintiff Delta will only be indemnified once the dispute is fully adjudicated.

The language in the Indemnification Clause can reasonably be interpreted more than one way. In supporting Defendant JCI's position, the Indemnification Clause restricts indemnification to times when costs are "imposed upon, incurred by or recovered from" Plaintiff Delta. Compl. Ex. 2A, at 2.2–7. The Service Agreement, however, is unclear as to what is meant by "imposed upon, incurred by or recovered from." If the Court were to interpret the language in favor of Defendant JCI, Plaintiff Delta may not be indemnified until after the issue of whether Defendant JCI is at fault is resolved in *Brown*. If the Court were to interpret the language in favor of Plaintiff Delta, Defendant JCI may have to indemnify Plaintiff Delta for any claim against Plaintiff Delta, regardless of whether the allegations underlying the claim have any merit. Either interpretation could have been reasonably intended by the parties at the time of contracting. "Any and all claims" and "imposed upon" do not have clearly defined meanings in the Service Agreement. *See* Compl. Ex. 2A, at 2.2–7. The language is ambiguous.

Other provisions in the Service Agreement further support the Court's conclusion that the language is ambiguous. The Warranty Provision reads that Defendant JCI need only reimburse Plaintiff Delta for a limited number of claims (*e.g.*, only facility user claims). The Indemnification Clause, read in favor of Plaintiff Delta, however, indicates that any and all claims shall be reimbursed. In a vacuum and isolated from context, these particular phrases may have commonly accepted legal definitions; but, when considered in light of the entire Indemnification Clause, and further the Service agreement as a whole, the Court is unable to ascertain the intent of the parties. The Service Agreement does not form a harmonious writing

and requires further fact-based investigation to determine the intent of the parties at the time of contracting. This investigation is a question of fact for the jury to determine the parties' true intent.

### B.  FAILURE TO OBTAIN AN INSURANCE POLICY

Since the Court finds the Indemnification Clause in the Service Agreement to be ambiguous and is unable to fully determine the parties' rights and obligations under the Service Agreement, the issue of whether Defendant JCI breached its obligation to obtain an insurance policy on behalf of Plaintiff WCAA need not be addressed at this time.

### V.  CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs Wayne County Airport Authority and Delta Air Lines, Inc.'s Motion for Summary Judgment [dkt 17] is DENIED.

IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated:  August 7, 2012